UNITED STATES OF AMERICA
DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

JANE DOE,

    Plaintiff                                          Case No.

v.                                                      Hon.

SIENA HEIGHTS UNIVERSITY,

    Defendants.

Attorneys for Plaintiff:
Nicholas Roumel (P37056)
Amanda M. Ghannam (P83065)
**NACHT & ROUMEL, P.C.**
101 N. Main Street, Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
nroumel@nachtlaw.com

## COMPLAINT AND JURY DEMAND

Plaintiff, Jane Doe, makes her complaint as follows:

### PRELIMINARY STATEMENT

"Jane Doe" was sexually harassed and assaulted over a one-year period by David Mills, a medically unlicensed individual hired by Defendant and given the title of "COVID Coordinator" with no discernible supervision or oversight by Defendant. Mills used the authority of his position to groom, stalk, sexually harass, and assault Plaintiff on multiple occasions; on information and belief many other young women.

1

Moreover, when Plaintiff made a Title IX complaint to the University, it utterly failed to implement legally required Title IX policies.

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Jane Doe ("Jane") was, at all times relevant, a full-time student at Siena Heights University who permanently resided out of the state of Michigan.

2. Jane requests anonymity in this lawsuit due to her status as a victim of sexual assault. She will file the appropriate motion for anonymity if necessary and requested by this court.

3. Defendant Siena Heights University is a private Roman Catholic University in Adrian, Michigan. It is registered with the State of Michigan as a domestic non-profit corporation, and its resident agent is Sr. Mary M. "Peg" Albert OP, PhD, at 1247 E. Siena Heights Dr., Adrian, Michigan, 49221.

4. The events that are the basis for this lawsuit took place in Adrian, Lenawee County, Michigan, while Jane was a student at Siena Heights.

5. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 2201 and 2202; Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 *et seq.*; the diversity jurisdiction provisions of 28 U.S.C. §1332, and pendent jurisdiction over the Michigan statutory and common law claims pursuant to 28 U.S.C. § 1367.

6. The amount in controversy exceeds $75,000 exclusive of costs and attorney fees.

**FACTUAL ALLEGATIONS**

7. Jane was a first-year student at Siena Heights in the school year 2021-2022, and living on campus.

8. In January, 2022, she became ill with COVID-19 and contacted a school nurse, who informed her that the "COVID Coordinator" would get in touch with her.

9. She was subsequently contacted by David Mills, the aforementioned COVID Coordinator.

10. In reality, unknown to Jane at the time, Mills had no formal medical training or license.

11. Mills arranged to visit Jane in her room. She felt vulnerable, as she was very sick and not dressed for company, but he insisted and assured her that it was okay.

12. Upon visiting her, he had medical testing materials, which were allegedly for COVID and/or strep throat.

13. After conducting an oral test, he told Jane she "did not have a gag reflex and that was a good thing to have." This statement struck Jane as sexual and made her very uncomfortable.

14. Mills helped Jane move into a "quarantine room" and commenced to contact her frequently. He visited her in her room, constantly checked upon her, texted her on numerous occasions, brought her food, and even left her several assorted gift cards.

15. Mills continued to contact Jane on a frequent basis, throughout the rest of the school year, and continuing the following school year.

16. In the fall of 2022, Jane was registered as a sophomore.

17. In November, 2022, she became very ill again, this time due to food allergies. Again she contacted the school nurse, who again arranged for Mills to visit Jane.

18. Mills arrived bringing prepared food and groceries. This time he was equipped with a stethoscope.

19. On November 19, 2022, Jane became so ill that she had her roommate take her to medical emergency (Henry Ford Allegiance Health Jackson hospital). Mills followed her there and would not stop touching her. Somehow, the hospital would not initially permit her roommate to be taken to a hospital room, but allowed Mills. He would not leave even when Jane was changing into a hospital gown, but at that time her roommate was allowed to enter and demanded that Mills step out of the room while Jane changed.

20. Upon leaving the hospital there was a big snowstorm and driving was dangerous. Mills insisted on getting Jane and her roommate a hotel room. They declined and went to Jane's roommate's grandmother's house.

21. On December 14 2022, Jane came down with another illness, which she believed was the flu. Again she contacted the school nurse, and again the University sent Mills. He came to Jane's room, asked her to lie down on the couch, and to lift up her shirt and roll down her pants. She was uncomfortable and sat up and did her best to prevent his assault.

22. In January, 2023, Jane got sick again. Again she contacted the school nurse, and went to an examination room at the school's medical facilities. Mills was there to treat her. He had Jane disrobe to her sports bra, and he examined her and touched her breasts while ostensibly using the stethoscope on her.

23. During the exam, he again conducted some type of oral swab and made the same comment as he had previously, about Jane not having a gag reflex and that was a good thing to have. Jane did not respond. During the exam, Mills commented on Janes "pretty hair."

24. On January 20, 2023, with the encouragement of a friend, Jane decided to make an official report to Siena Heights. She visited the Department of Public Safety and reported the above conduct.

25. Shortly afterwards, Jane was contacted by the University's Title IX coordinator for an interview. She was not empathetic and said she wanted to speak to Jane's roommate for corroboration.

26. Shortly after that interview, the Title IX coordinator contacted Jane via email, which stated in part, "I need you to send me an email requesting an investigation so I can make it an official Title IX Investigation. Just a sentence or two saying based on the information on your DPS report you would like a Title IX investigation into Dave Mills behavior. If you would do this today I would appreciate it. Thank you."

27. Jane responded, "For my safety, as well as other students on campus, I would like to pursue an investigation. I have spoken with DPS, as well as you about the behavior of a staff member, David Mills."

28. The Title IX coordinator responded, "Perfect. Thank you. An outside investigator has been hired."

29. On February 9, 2023, the Title IX coordinator sent her a text message stating that "Dave is no longer at Siena Heights. I believe he is cleaning out his office today. If you hear from him again let me know. He should not be anywhere near our campus. So the investigation is closed."

30. The next day, on February 10th, Jane received an email from the Title IX Coordinator stating, "Due to the confidentiality of Title IX I ask you refrain from talking about the situation with Mr. Mills with anyone other than me or your roommate and ask her to do the same. Thank you."

31. Despite that admonishment, Jane and several other classmates began sharing their experiences with David Mills, and at least two others had also made official reports to the University.

32. Jane also learned that even after leaving the University, Mills was still contacting other female students via text message, phone calls, FaceTime, and even meeting students in person.

## LEGAL ALLEGATIONS

### Count I
### *Title IX Gender Discrimination*

33. Defendant Siena Heights University was the recipient of federal funds and was therefore subject to the duties and purposes of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 *et seq.*

34. Plaintiff suffered sexual harassment and assault because of her gender, female.

35. The harassment was so severe, pervasive, and objectively offensive that it could be said to deprive Plaintiff of access to the educational opportunities or benefits provided by Siena Heights.

36. Siena Heights utterly failed to discharge its responsibilities under Title IX to maintain a campus safe from sexual harassment, by hiring the untrained and unlicensed David Mills to be its "COVID Coordinator" and to have an official campus

7

position with authority and access to young female students who were especially vulnerable due to illness.

37. Siena Heights, among other things,

 a. Failed to adequately train, and maintain policies, handbooks and practices regarding appropriate procedures for addressing harassment and sexual abuse, including staff awareness, prevention and response.

 b. Failed to adequately investigate and otherwise respond to reports of sexual harassment and sexual assault.

 c. Failed adequately train, remediate, maintain appropriate oversight to prevent sexual harassment and sexual assault.

 d. Failed to adequately screen, hire, and supervise a person in a sensitive medical position, cloaking David Mills with the official imprimatur of a medical title, equipment, and use of campus health facilities, and allowing him unfettered access to young women with medical vulnerabilities.

 e. Failed to adequately train, and maintain policies, handbooks and practices regarding internal reporting of sexual harassment, assault, and conduct of internal investigations.

 f. Failed to adequately train, and maintain policies, handbooks and practices regarding communications with students concerning prevention,

reporting, investigation, and resolution of sexual harassment and sexual misconduct allegations.

  g. Failed to adequately train, and maintain policies, handbooks and practices to assure the safety of the student population in light of known harassment, assault, and to prevent the recurrence of such events.

38. Defendant Siena Heights was deliberately indifferent to risk of such harassment.

39. Defendant's violation of Title IX has damaged Plaintiff as described herein and below.

## *Count II*
## *Elliot-Larsen Civil Rights Act, Sex Harassment*

40. Defendant Siena Heights is a place of public accommodation, a public service, and an educational institution as defined in Michigan's Elliot-Larson Civil Rights Act (ELCRA), MCL 37.2301, MCL 37.2401.

41. Defendant violated the ELCRA and deprived Jane of her civil rights by, *inter alia*:

  a. subjecting her, because of her sex, to unwanted conduct and communication of a physical and sexual nature, which had the purpose and/or effect of denying her the full benefit of the educational program of CPS and full

9

and equal access to the use and privileges of public accommodations, public service, and educational opportunity;

    b.    allowing and/or failing to stop harassment of Jane by Mills;

    c.    their actions and omissions as otherwise described above.

*Count III*
*Negligence*

42. Defendant Siena Heights is not a licensed health care facility.

43. David Mills was not a licensed health care professional.

44. Nonetheless, Defendant permitted Mills to engage in health care functions as described herein.

45. Defendant owed a duty to Jane, and to the student population at large, to utilize only professionally educated, trained, licensed, and supervised personnel to respond to the health care needs of its students.

46. This duty was especially acute during the COVID-19 pandemic.

47. Defendant breached its duty by negligently failing to screen, select, hire, retain, and supervise David Mills as its "COVID coordinator."

48. Defendant's cavalier oversight even extended to making Mills the first line of contact for Jane and other ill and medically vulnerable students.

49. It was utterly foreseeable that such a person would not discharge health care functions in a professional or non-negligent manner.

50. Mills did, in fact, discharge his duties in a negligent, non-professional, and harmful manner.

51. Defendant is vicariously liable for the alleged negligence of its agents and employees, including Mills.

52. Defendant had sufficient knowledge or foreseeability of the propensity of Mills to groom, harass, and assault female students such as Jane Doe.

53. Defendant's failure to act, to prevent Mill's negligent conduct and sexual assault of Jane, was so reckless that it demonstrated a substantial lack of concern for Jane's safety, security, and well-being, and amounted to gross negligence.

54. Defendant's negligence and/or gross negligence damaged Jane as described herein and below.

## Damages

55. As a proximate cause and/or consequence of Defendant's conduct and actions, Jane suffered actual and/or consequential damages including but not limited to emotional and mental distress; embarrassment, anger, anxiety and depression; counseling costs and other incidental damages – all of which adversely affected her hedonic value of life, social and family life, school, academic, and extra-curricular performance.

57. Defendant's actions were made with reckless disregard to Plaintiff's legal and civil rights and warrant imposition of the greatest possible combination of punitive, emotional distress and exemplary damages, as allowed by law.

## Jury Demand

Plaintiff demands a jury trial.

## Relief Requested

*W H E R E F O R E*, Plaintiff Jane Doe, prays for a judgment against the Defendant in excess of $75,000, along with interest, attorney fees and costs, and whatever declaratory and other relief this Court deems necessary and appropriate to enforce Plaintiff's constitutional rights.

Respectfully submitted,

NACHT & ROUMEL, P.C.

*s/Nicholas Roumel*

*s/Amanda M. Ghannam*

June 13, 2023

Nicholas Roumel
Amanda M. Ghannam
Attorneys for Plaintiff